# WILLIAM J. MEYERS

## *vs.*

# THE NEELEY AND ENSOR AUTO COMPANY,
### A Body Corporate.

*Lien for Repairs—Rights of Conditional Vendor.*

The common law lien for repairs to an automobile is available as against a title reserved in favor of the vendor under a conditional sale contract duly recorded, although the repairs were made at the purchaser's request without the vendor's knowledge, the purchaser having been given the possession, and so being impliedly authorized to proceed, in case of reasonable necessity, to have the automobile repaired.

*Decided March 16th, 1923.*

Appeal from the Baltimore City Court (Stein, J.).

Action of replevin by William J. Meyers against the Neeley & Ensor Auto Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before Boyd, C. J., Thomas, Pattison, Urner, Stockbridge, and Offutt, JJ.

*George J. Kessler,* for the appellant.

*Carlyle Barton,* with whom were *Niles, Wolff, Barton & Morrow,* for the appellee.

Urner, J., delivered the opinion of the Court.

The question presented on this appeal is whether the appellee's common law lien for repairs to an automobile is available as against the appellant's title reserved under a conditional sale contract, which had been duly recorded. There is an agreement as to the facts. The car which the appellee repaired had been sold by the appellant on October 30th, 1920, for $1,750, to a purchaser who made a partial payment in cash and gave his promissory notes for the balance, amounting to $1,658.29. Subsequent payments aggre-

gated $283, and the amount still due the appellant for the automobile is $1,425.29, with interest. The purchaser was given possession of the car at the time of the sale and used it until January 1st, 1921, when he brought it to the appellee's garage for repairs. This was done without the appellant's knowledge. There is no question as to the necessity for the repairs or as to the reasonableness of the charges therefor, which amount to $90.86. The contract of sale, upon which the appellant relies, was recorded eleven days after its execution. It provided that title to the car should remain in the vendor until the purchase price was fully paid, and that upon default in the payment of any of the specified installments, the vendor should have the right to take the car into his possession. The registration of title in the office of the Commissioner of Motor Vehicles was made in the name of the purchaser of the automobile, with a reference to the appellant's interest under the conditional sale contract. After the repairs to the car had been completed, the vendee was notified of that fact but failed to call for it or to pay the bill for the repairs, and the appellant, several months later, in consequence of the refusal of the appellee to surrender the car except on payment of its claim, brought the pending action of replevin. The verdict and judgment were for the appellee. The only exception was to a ruling that the right of possession incident to the lien for the repairs is superior to that asserted by the appellant under the terms of the contract of sale.

It is clear that the existence of a valid lien at common law in favor of the appellee, for the value of the labor and material used in the repair of the automobile, could not be denied by the person at whose instance the service was rendered, or be disputed on behalf of any interest for which he was then authorized to act. *Winton Co.* v. *Meister,* 133 Md. 318. While the appellee was chargeable with constructive notice of the title reserved to the appellant by a contract of conditional sale recorded under the provisions of the Act of

1916, chapter 355 (Code, art. 21, sec. 53A), yet it was
apparent that the purchaser was permitted to have the exclu-
sive posession and use of the car, and the repairs were essen-
tial to its operation.  The reservation of title was intended to
be consistent with a right of user which could not be effect-
ually exercised unless the automobile were kept in proper
condition.  The occasional need of repairs was an inevitable
incident of the use for which the car was purchased.  It
may be fairly implied, therefore, that the delivery of posses-
sion to the appellee involved also an authorization to pro-
ceed, in case of reasonable necessity, to have the car repaired.
The recognition of such an agency by implication is sup-
ported by considerations of justice to the appellee, whose
work and materials were bestowed upon the car, and it does
no injury to the interests of the appellant, who is subjected
to no personal liability, but is simply required to recognize a
lawful lien for repairs which conserve the value of his own
property.

In *Hammond* v. *Danielson,* 126 Mass. 294, a mortgaged
hack used for hire was repaired at the instance of the mort-
gagor, and it was held that the person making the repairs
had a lien therefor as against the mortgagee.  The court
said: "It was the manifest intention of the parties that the
hack should continue to be driven for hire and should be
kept in a proper state of repair for that purpose, not merely
for the benefit of the mortgagee, but for that of the mortgagor
also, by preserving the value of the security and affording a
means of earning the wherewithal to pay off the mortgage
debt."

The Supreme Court of New Jersey, in an opinion deliv-
ered by Justice Pitney, decided that a blacksmith who
repaired a mortgaged wagon under employment by the mort-
gagor, who had the possession and use of it by permission of
the mortgagee, was entitled to a lien for the repairs at com-
mon law.  It was held that the mortgagor had implied author-

ity from the mortgagee to have the wagon kept in a condition for its intended use. *Ruppert v. Zang,* 73 N. J. L. 216.

In *White v. Smith,* 44 N. J. L. 105, where the lien of a wheelwright for repairs to a wagon was sustained as against an existing mortgage, it was said, after a review of decisions on the subject, that they placed the right to the lien upon "the ground that the value of the chattel was enhanced by the labor of the workman, and that it was presumably the intention of all parties that the chattel should be kept in a proper state of repair; from which facts authority was inferred that the person in possession and entitled to use it might have the repairs made upon the usual and ordinary terms, *i. e.,* that the property having been augmented in value by the repairs, the workman should have a lien on it for the work and labor which enhanced its value, and for which, by the common law, he would be entitled to his lien if he was lawfully employed to render the service."

In the leading case of *Williams v. Allsup,* 10 C. B. (N. S.) 417, in which a shipwright was held to be entitled to a prior lien for repairs on a vessel which had been mortgaged, it was said that the authority implied from possession and use by the mortgagor was to have the vessel repaired on the usual terms, which would not involve the credit of the mortgagee, as the mortgagor alone would be personally liable, but would include a lien on the vessel in favor of the shipwright for the value of his work.

The Supreme Court of Indiana, in *Watts v. Sweeney,* 127 Ind. 123, said: "Where property is to be retained and used by the mortgagor for a long period of time, it will be presumed to have been the intention of the parties to the mortgage, where it is property liable to such repairs, that it is to be kept in repair; and when the property is machinery or property of a character which renders it necessary to entrust it to a mechanic or machinist to make such repairs, the mortgagor in possession will be constituted the agent of the mort-

gagee to procure the repairs to be made; and as such necessary repairs are for the betterment of the property, and add to its value to the gain of the mortgagee, the common law lien in favor of the mechanic for the value of the repairs is paramount and superior to the lien of the mortgagee."

In further support of our conclusion, we may refer to *Reeves* v. *Russell*, 28 N. D. 265, L. R. A. 1915D, 1149, and note; *Drummond Carriage Co.* v. *Mills*, 54 Neb. 417, 40 L. R. A. 761; *Broom* v. *Dale*, 109 Miss. 52, 67 So. 659, L. R. A. 1915D, 1146; *Keene* v. *Thomas* (1905), 1 K. B. 136; *Scott* v. *Delahunt*, 65 N. Y. 128; *Wolfman Co.* v. *Eisenberg*, 190 N. Y. Supp. 259; *Terminal Taxi Corp.* v. *O'Rourke*, 193 N. Y. Supp. 238; 6 *C. J.*, 1138; 3 *R. C. L.*, 133-4; 1 *Jones, Liens*, 3rd ed., sec. 744.

The brief for the appellant cites the cases of *Meyers* v. *Bratespiece*, 174 Pa. 119; *Hollingsworth* v. *Dow*, 19 Pick. 228; *Small* v. *Robinson*, 69 Me. 425; and *Baughman Automobile Co.* v. *Emanuel*, 137 Ga. 354, 38 L. R. A. (N. S.), 97. The first two cases in this group are readily distinguishable from the case at bar, and any analogy which the other two cases may bear to the one now before us does not enable us to apply to it the theory upon which they were decided.

It has been argued that, as the appellant relies upon a reserved title and not merely upon a mortgage lien, the principle of the decisions to which we have mainly referred is not applicable to this case. But we do not consider this a valid distinction. It is the right of possession with which such a case is concerned and, whether claimed under a mortgage or under a conditional sale contract, it must yield to a superior right, if found to exist, on the part of a contesting lienor. In either instance the principle of implied authority which we have discussed may be successfully invoked, if the special facts justify its application.

*Judgment affirmed, with costs.*