**In re Roger Wayne MODDELMOG, Debtor.**

**J. Michael Morris, Trustee, Plaintiff–Appellee,**

**v.**

**Boeing Wichita Credit Union, Defendant–Appellant,**

**and**

**Roger Wayne Moddelmog, Defendant.**

No. 02–1372–WEB.
Bankruptcy No. 01–13150–7.
Adversary No. 02–5015.

United States District Court, D. Kansas.

March 7, 2003.

Eric D. Bruce, Bruce, Bruce & Lehman, Wichita, KS, Petra Johnson, Wichita, KS, for Defendant.

J. Michael Morris, Klenda Mitchell Austerman & Zuercher LLC, Wichita, KS, for Appellee.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

Boeing Wichita Credit Union ("BWCU") appeals a ruling by the Bankruptcy Court in favor of the trustee. The Bankruptcy Court found that a security interest held by BWCU in the Debtor's pickup truck was unperfected and could therefore be avoided by the trustee and preserved for the benefit of the estate. The security interest was unperfected, the Bankruptcy Court found, because BWCU was not listed as a lienholder on the Debtor's current certificate of title to the vehicle. In this appeal, BWCU argues that it was perfected because it was listed as a lienholder on the Debtor's *initial* title (although not on two subsequently issued titles) and because BWCU "did everything it could to perfect its security interest."

This court has jurisdiction over the appeal pursuant to 28 U.S.C. §§ 158(a) & 158(c)(1). After reviewing the briefs, the court concludes that oral argument would not assist in deciding the issues presented.

## I. *Facts.*

The facts are undisputed. On February 16, 1998, the Debtor and his non-debtor wife purchased a 1997 Ford F 350 pickup truck on credit from a dealership in Cheney, Kansas, and granted the dealership a security interest in the truck. The dealership immediately assigned its interest to BWCU. On the same day, BWCU mailed a properly executed Notice of Security Interest (NOSI) to the Division of Motor Vehicles of the Kansas Department of Revenue. An application for secured title was mailed to the State of Kansas on March 12, 1998, and on March 27, 1998, the State of Kansas issued a certificate of title to the Debtor. The title listed BWCU as a lienholder.

The Debtor subsequently moved to Colorado, and on January 13, 2000, he applied for a Colorado certificate of title for the truck. The title application was delivered to the Colorado Department of Motor Vehicles without contact or knowledge of BWCU. The Kansas certificate of title was surrendered by the Debtor to the Colorado Department of Motor Vehicles as part of the application process. On February 16, 2000, a Colorado title for the Ford F–350 was issued to the Debtor. For unknown reasons, the Colorado title did not include the lien of BWCU. BWCU did not receive any information or notice of this title until after the filing of the bankruptcy.

The Debtor later moved back to Kansas. A new title application was made on April

23, 2001, and a new Kansas title was issued on May 18, 2001. The new title does not reflect BWCU's lien. BWCU did not receive any information or notice of this title until after the filing of the bankruptcy. (The parties do not say so expressly, but the court assumes the Debtor also registered the vehicle in Kansas when he obtained the new Kansas title.)

On June 29, 2001, the Debtor filed for bankruptcy. He has made all the payments under the note with BWCU. On the date of the bankruptcy, BWCU was owed $13,860.27.

In the bankruptcy proceeding, the trustee filed a complaint alleging that BWCU's security interest was unperfected and could be recovered for the benefit of the estate. BWCU denied the claim. As noted above, the Bankruptcy Court determined that BWCU's lien was unperfected because it was not listed on the current Kansas certificate of title.

## II. *Discussion.*

 BWCU contends that its lien was perfected pursuant to former K.S.A. §§ 8–135 and 84–9–302(3)(c)[1] because the lien was noted on the Debtor's initial Kansas title. It further argues that it did all that it could under the circumstances, and so in equity should be considered perfected despite the absence of a notation on the current title. *Citing e.g., Commerce Bank*

*v. Chambers (In re Littlejohn),* 519 F.2d 356 (10th Cir.1975); *Orlando Dodge, Inc. v. First Union Nat'l. Bank,* 661 So.2d 322 (Fla.App.1995); *In re Beaudoin,* 160 B.R. 25 (Bankr.N.D.N.Y.1993) (noting "a reluctance to assign undue weight to the information contained on a certificate of title"). Essentially, then, the issue now before the court is whether BWCU's security interest was perfected as of the filing of the bankruptcy.[2]

 The facts of the case lead to a rather convoluted analysis of the perfection issue. After reviewing the record and the relevant law, the court agrees with the Bankruptcy Court's determination that the sequence of events left BWCU's interest unperfected at the bankruptcy filing. BWCU clearly had a perfected security interest in 1998 when the Debtor initially obtained a Kansas title that noted BWCU's lien. *See former K.S.A. § 84–9–302 (1996), Kansas Comment* ("Subsections (3)(b) and (3)(c) make it clear that security interests in motor vehicles can be perfected only by indication of the security interest on the certificate of title."). That changed, however, when the Debtor removed the vehicle to Colorado, surrendered the Kansas title, and obtained a "clean" title from the State of Colorado. Former K.S.A. § 84–9–103 addressed perfection of security interests in multiple state transactions such as this. Subsection (2) dealt specifically with motor vehi-

---

1. All references in this opinion are to "old" Article 9. As the Bankruptcy Court noted, old Article 9 governs here because this action was filed on June 29, 2001, prior to the effective date of the "new" Article 9 in both Kansas and Colorado. *See* Kan.Sess.Laws, ch. 142; 2001 Colorado Sess. Laws, ch. 321.

2. Pursuant to 11 U.S.C. § 544(a), the trustee has, as of the commencement of a bankruptcy case, the rights and powers of a judicial lien creditor, without regard to any knowledge of the trustee or of any creditor. This entitles the trustee to cancel certain transfers and

obligations of a debtor, including unperfected liens on property belonging to the bankruptcy estate. *See Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531, 1532 (10th Cir.1987). The rights and priority given to a lien creditor are determined by state law. *Woodson v. Utica Square Nat'l Bank of Tulsa (In re McClain),* 447 F.2d 241, 243–44 (10th Cir. 1971). In this instance, the parties agree that under Kansas law a lien creditor has priority over an unperfected secured creditor. *See former K.S.A. 84–9–301(1).*

cles—that is, with goods covered by a certificate of title issued by a State whose law requires indication of a security interest on the certificate as a condition of perfection. Former K.S.A. § 84–9–103(2)(b) states that where a vehicle is removed from one state to another, perfection of the security interest is governed by the law of the jurisdiction issuing the certificate "until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, *but in any event not beyond surrender of the certificate.*" (emphasis added). The Official UCC Comment to § 9–103 explains that under this provision "[t]he security interest perfected by notation on a certificate of title will be recognized without limit as to time; but ... perfection by this method ceases if the certificate of title is surrendered (paragraph (2)(b))." Under this provision, perfection was no longer achieved by the Kansas certificate once that title was surrendered to the State of Colorado. At that point, the vehicle was covered by the newly issued Colorado title, and pursuant to Colorado law—which as the Bankruptcy Court noted was identical in all material respects to Kansas law—the lien was unperfected because it was not listed on the Colorado certificate. *See Vance v. Casebolt,* 841 P.2d 394, 399 (Colo.App.1992) ("[f]or a security interest in motor vehicles to be perfected, the secured party must note its security interest on the certificate of title. Here, Vance did not comply with this statute, and therefore, his security interest in these vehicles and trailers was unperfected."); *Colo.Rev.Stat. Ann. § 4–9–103(2) (2000).* Colorado law continued to govern until the Debtor brought the vehicle back to Kansas and application of K.S.A. § 84–9–103(2)(b) was again triggered through surrender of the Colorado certificate or through registration of vehicle in Kansas. Presumably the Debtor

surrendered the Colorado title in order to obtain the Kansas title in May of 2001, which meant that Colorado law no longer governed. Even if that were not the case, Colorado law ceased to apply when the new Kansas title was issued and the vehicle was again registered in Kansas. At that point, perfection was once again governed by Kansas law. BWCU was clearly not perfected under the Colorado title when the Debtor brought the vehicle back to Kansas, so there could be no question of "carry over" perfected status from Colorado, and the absence of any notation on the 2001 Kansas certificate meant the lien was not perfected at that point under Kansas law, notwithstanding the fact that the lien was omitted due to the malfeasance or carelessness of someone other than BWCU.

Although BWCU argues this result is inequitable and urges the court to construe the law otherwise, the above conclusion is dictated by the language of the Kansas Commercial Code. It also appears to be consistent with Kansas case law and the views of leading commentators. For example, in *Mid American Credit Union v. Bd. of Sedgwick County Comm.,* 15 Kan. App.2d 216, 806 P.2d 479, *rev. denied* (1991), the Kansas Court of Appeals addressed a claim for damages where a county clerk failed to include a lender's lien on a motor vehicle certificate of title. The lender subsequently sued the county for negligence, claiming the error had caused the lender to lose its security interest when the vehicle was transferred to successive assignees. The court concluded that this error had in fact damaged the Credit Union because "[t]he lien must be noted on the certificate of title to be perfected. Allowing perfection without such a notation would endanger the reliability of sales of vehicles by assignment of title. Here Mid America's security interest was

not perfected because it was not listed on the certificate of title." *Id.*, 15 Kan.App.2d at 223, 806 P.2d 479. The court also rejected a suggestion that the lender could have perfected its lien by filing a Notice of Security Interest, noting this method "is only meant to perfect the lien until the certificate of title is issued." *Id.* The import of *Mid American* here is clear: the absence of the lien from the certificate of title means the lien is unperfected, even if the omission occurred through no fault of the secured party. This view is shared by Professors White and Summers, who make the following observations on former § 9–103's application to removal of a vehicle from one state to another:

> What if our debtor immediately applied for a new certificate of title and procured new license plates and thus a new "registration" in the second state? In the normal course of events she would surrender her old certificate of title and a new one would be issued; thus, the perfecting acts that had occurred in State 1 would no longer protect her creditor. However, if things work properly, the official in the new state would have listed her creditor as a secured party. That, under the law of the new state, would have perfected the creditor as to the original debt. If, for any reason, that did not occur, the creditor in State 1 has now become unperfected under the "but beyond" provision of [§ 9–103(2) ] and is not protected even for four months.

4 *James White & Robert Summers, Uniform Commercial Code* § 31–22, at 231 (4th ed.1995). Similarly, another leading treatise discusses a hypothetical transaction under § 9–103 in which a Bank has a lien noted on a title in "State A," and the debtor subsequently takes the car to another state and fraudulently obtains a clean title before filing bankruptcy:

> Under the UCC, the trustee would get the car in this situation because Bank's

perfection, which was based on the certificate issued by State A, would lapse upon "surrender of the certificate," even if this took place less than four months after removal. * * * In a state where the debtor is allowed to retain possession of the title subject to a lien, there is thus great exposure for the secured party. * * * Whenever the old title is surrendered and a new one is issued without the lien—and it does not matter who does the surrendering, or when—the original security interest lapses.

*Barkley Clark & Barbara Clark, The Law of Secured Transactions under the Uniform Commercial Code,* ¶ 12.03 at 12–34 (Rev. ed.2002).

BWCU's argument that it should be considered perfected because it "did all that it could do" is unavailing. The court cannot override the clear mandate of the Kansas Commercial Code or the Kansas case law, both of which dictate a finding that the security interest is unperfected in this situation because it was not listed on the title. The court notes that the comments to former § 84–9–103 suggest that a secured party may attempt to protect itself by retaining the title or by providing for repossession of the vehicle if the debtor obtains a title that does not show the lien. *See* former K.S.A. § 84–9–104, Official UCC Comment 4. Be that as it may, the court concludes that regardless of BWCU's diligence or lack thereof, the law compels a finding that BWCU's lien is unperfected.

III. *Conclusion.*

The judgment of the Bankruptcy Court is AFFIRMED. IT IS SO ORDERED this Day of March, 2003, at Wichita, Ks.